### B. F. AVERY & SONS v. J. I. CASE PLOW WORKS.

(Circuit Court, E. D. Wisconsin. July 17, 1905.)

1. PATENTS—CONSTRUCTION OF CLAIMS—EFFECT OF FORMULA "SUBSTANTIALLY AS DESCRIBED."

Where a patent contains specific claims in which certain features described in the specification are expressly claimed, and also broad claims from which such features are omitted, they cannot be read into the broad claims because of the closing formula "substantially as described," for the purpose of narrowing such claims to avoid anticipation.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 241.]

2. SAME—INFRINGEMENT.

Where a patentee in a claim for a combination specifies any element as entering into the combination, he makes such element material to the combination, and it cannot be held immaterial by the court for the purpose of finding infringement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 253.]

3. Same—Equivalents—Application of Doctrine to Improvement Patent.
    In applying the doctrine of equivalents, the courts discriminate in favor of a primary patent, and a narrower rule is applied to a patent which is merely for improvements upon an old mechanism, in which case the doctrine is applied only to changes which are palpably colorable.

    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 374, 379.]

4. Same—Infringement—Plows.
    The Avery patent, No. 650,771, for a double moldboard plow, claims 2 to 6, inclusive, which are broad claims, are void for anticipation in the prior art; claims 7 and 8, which cover a specific combination of old elements, including "brace rods rigidly secured to the moldboard," and attached at the other end to the runner, which perform the function of bracing and strengthening the moldboard, disclose invention, and are valid, but are limited by such specified elements, and are not infringed by a construction in which the braces from the runner are not attached to the moldboard, and do not, therefore, perform such function.

In Equity. Suit for infringement of letters patent No. 650,771 for a plow, granted to George C. Avery May 29, 1900. On final hearing.

This is an action in equity, predicated upon alleged infringement of letters patent No. 650,771 for an improvement in the "double-moldboard" or "middle-burster" plows. The bill is in the usual form. The answer denies that the patented structure discloses any patentable invention in view of the state of the art; avers that complainants' invention had been anticipated by United States letters patent No. 410,218, issued to Ira W. Sylvester September 3, 1889. Infringement is also specifically denied.

The original verified application of the patentee contained four claims, which are found at pages 89 and 90, defendant's record. The second claim was rejected on the Ward patent No. 604,814. (Defendant's record, page 178.) Thereupon the second claim was canceled, and the attorneys for the patentee reconstructed the application, and substituted the present claims Nos. 2, 3, 4, 5, and 6 in place of the canceled claim. Original claims 3 and 4 became 7 and 8 in the amended application. Thereupon the amended claims from 2 to 6, inclusive, were again rejected, on Billups' patent, No. 123,858, and Sylvester's patent, No. 410,218. Reconsideration was asked by the patentee's attorney on the ground that the essential feature of each of such claims (2 to 6) was the pivoted runner and rudder, and that the Billups and Sylvester patents did not pivot their depth-runners so as to admit of a double adjustment. On the basis of this construction the patent in suit was issued.

The first claim is not in issue here. Omitting the elements "standard, share, and moldboard," which are common to all the claims, the elements of the several claims in controversy are as follows:

Second claim: "A depth-runner pivoted at its forward end to the standard, a knife or rudder pivoted at its forward end to the depth-runner, and means for independently adjusting the rear ends of the depth-runner and rudder."

Third claim: "A depth-runner pivoted at its forward end to the standard, a knife or rudder pivoted at its forward end to the depth-runner, and means for adjusting the height of the depth-runner and clamping the rear end of the rudder thereto."

Fourth claim: "A depth-runner comprising two sections pivoted at their forward ends upon opposite sides of the standard, means for adjusting the height of their rear ends and a knife or rudder pivoted at its forward end between the sections of the depth-runner."

Fifth claim: "A depth-runner comprising two sections pivoted at their forward ends upon opposite sides of the standard, means for adjusting the height of their rear ends, a knife or rudder pivoted at its forward end between the sections of the depth-runner, and means for adjusting the height of its rear end independently of the adjustment of the depth-runner."

Sixth claim: "A depth-runner comprising two sections pivoted at their forward ends on opposite sides of the standard, a knife or rudder pivoted at its

forward end between the sections of the depth-runner, and means for adjusting the height of the rear ends of the depth-runner and clamping the knife or rudder between its sections."

Seventh claim: "A depth-runner, comprising two sections of similar shape, applied side by side and pivoted at their forward ends to each side of the plow-standard, the said sections having vertical slots at their rear ends, brace-rods rigidly secured to the moldboard and extending toward the runner, a bolt passing through eyes in said rods and through the slots in the runner, and a knife or rudder pivoted between the said depth-runner sections, whereby the said runner may be clamped in different adjusted positions between the runner sections."

Eighth claim: "A double-moldboard plow, comprising a standard, a double frog, a double share secured thereto, and a double-moldboard secured to the same, a depth-runner arranged beneath the moldboard and formed of two sections having their forward ends curved forwardly and pivotally attached on each side of the plow-standard, the said runner-sections being provided with vertical, elongated slots at their rear ends, laterally-extending flanges formed upon the lower edges of the said sections to provide a broad-bearing surface, a knife-plate or rudder pivoted between the sections of the runner, the said rudder being curved at its forward ends of the runner-sections, rigid brace-rods extending from the moldboard to each side of the runner, a clamping-bolt passing through eyes upon the said brace-rods and through the elongated slots in the runner-sections so as to clamp the runner in different adjusted positions, the knife or rudder being thereby clamped between the said sections in different adjusted positions."

Each of said claims contained at the end the formula, "substantially as described."

The defendant offered in evidence as anticipatory devices the following patents: Burke (1858), No. 22,013; Billups (1872), No. 123,858; Brantly (1881), No. 248,569; Lawrie (1882), No. 261,001; Laughlin (1884), No. 297,815; Roberson (1885), No. 326,591; Moore (1887), No. 366,597; Landauer (1888), 388,982; Sylvester (1889), No. 410,218; Holsclaw (1891), No. 459,204; Montgomery (1891), No. 459,410; McMillan (1896), No. 555,327; Dean (1896), No. 563,752; Ward (1898), No. 604,814; Ankarstolpe (1898), No. 607,207. Also the structure shown on page 22, Avery Catalogue 1899–1900; also Avery's Advance double moldboard plow, Avery Catalogue 1899–1900, page 23; also Avery's 'Lone Star' plow, page 99, Avery Catalogue 1899–1900.

Spooner & Rosecrants and Mason, Fenwick & Lawrence, for complainant.

Peirce & Fisher, for defendant.

QUARLES, District Judge. The first proposition to be considered is the validity of the broad claims 2 to 6 (both inclusive). It requires but a casual inspection of the plows introduced in evidence to determine that defendant's structure infringes each of said claims, if such claims are valid. This was freely admitted at the hearing by defendant's counsel. To pass upon the validity of these claims intelligently, we must consider the prior state of the art. What is claimed here is a combination. Each of the elements is old. The standard, share, and moldboard are as old as the plow structure. The depth-runner or shoe was well known in the art, operating as a fulcrum in handling the plow and controlling the angle at which the point entered the ground. It appears in numerous early plows under various names. The knife or rudder, likened by reason of its function to the centerboard of a boat, was long before complainant's patent employed on land side as well as double-molded plows. It has appeared in many shapes and under various names, attached and adjusted by various contrivances.

Long before the complainant's patent the desirability of raising or lowering the rear end of the depth-runner and adjusting the rear end of the knife so as to take up wear and to keep the plow steady while in motion were fully appreciated, and various means were resorted to for that purpose. The bolt and slot device had also been used as a means of adjusting both runner and knife. As early as 1858 Burke devised a "middle-burster" plow having a rudder, which he calls "a knife-shaped guide pivoted to the bedplate, its rear end adjusted by means of a set-screw located on the rear of the beam." In 1872 Billups patented an improvement in a double-moldboard plow, wherein a prominent feature was a rudder called by him a "guide-coulter," which was pivoted in a cavity of the shoe or runner, and was vertically adjustable by means of a series of holes and a bolt or pin. In 1888 Landauer patented "an adjustable heel for plows," which was pivoted at its forward end to the land side, contained a vertical slot at the rear end, operated with a heel bolt. In 1884 Laughlin patented a plow structure having a runner and rudder each independently adjusted by a slot and bolt device, wherein the parts performed the same functions as in the complainant's patent. Therefore, if there be patentable novelty in the complainant's structure, it must be because of a new arrangement of well-known elements.

It is unnecessary to take each of these claims separately through the field of the prior art. The sixth claim embodies all the features found in claims 2, 3, 4, and 5, except that it is silent as to an independent adjustment called for by claims 2 and 5. If, therefore, this claim, combined with the feature of independent adjustment, has been anticipated by any of the constructions embraced in the references, such fact will be conclusive as to each of the broad claims.

Now, take the Lone Star plow. (Defendant's Record, 193.) It clearly presents the following elements: Standard; share; moldboard; a depth-runner comprising two sections, pivoted at their forward ends upon opposite sides of the standard; a knife or rudder pivoted at its forward end between the sections of the depth-runner; independent means for adjusting the height of the rear ends of the depth-runner and rudder and for clamping the knife or rudder between said sections. The slot and bolt device is employed in each adjustment. This amounts to a complete anticipation. The sixth claim may also be read onto the Sylvester plow in the same way with like results. The Sylvester structure, which was in actual use by the inventor, and which is in evidence, differs in detail from his patented structure, in that the "adjustable braces," which are not specifically developed in the patent, appear and are operated by a slot and bolt device and the runner sections are pivoted at their forward ends to the standard. If this Lone Star plow or the Sylvester plow had appeared subsequent to the date of complainant's patent, each would be a clear infringement; and the rule is familiar that that which infringes if later, will anticipate if earlier. Knapp v. Morss, 150 U. S. 228, 14 Sup. Ct. 81, 37 L. Ed. 1059. Sylvester left it to the judgment of the mechanic to adopt for the

runners any adjustable brace then known to the art. A substitution of either of the well-known devices for adjusting the runner being applied to the Sylvester structure will meet every call in the broad claims of the complainant's patent. This is well illustrated by the drawing offered by the defendant upon the hearing. It will be observed that neither of these claims 2 to 6 specifies any mechanism for adjusting either the runner or rudder. Complainant's expert in his testimony (complainant's record, 33) substantially concedes that inasmuch as the second, fourth, and fifth claims do not specify the precise means of adjustment, but treat it broadly and without modification, therefore such claims would cover any and all suitable means for such adjustment.

### Construction of Claims 2 to 6.

The complainant insists upon a construction which will narrow claims 2 to 6, and import into them the specific structure shown by the drawings and particularly described in claims 7 and 8. This claim is based upon the formula "substantially as described," which is made an appendage to each of the broad claims. The contention is that this language virtually incorporates into the claim the subject-matter of the specification and the specific device shown by the drawing. The effect, of course, would be to limit the claims to the bolt and slot contrivance for adjusting both runner and rudder, whereby both functions are imposed upon a single heel bolt. In an early case it was held that these words "substantially as described" are always implied and that the construction of a claim must be the same whether this phrase be used or not. Matthews v. Schoneberger (C. C.) 4 Fed. 635–638; Robinson on Patents, § 577. The force of this formula "substantially as described" has been destroyed by the Supreme Court in Hobbs v. Beach, 180 U. S. 399, 21 Sup. Ct. 409, 45 L. Ed. 586. After reviewing the authorities, the court say:

"Without determining what particular meaning, if any, should be given to those words, we are of opinion that they are not to be construed as limiting the patentee to the exact mechanism described."

The court do not say in express terms that this language is meaningless, but, what amounts to the same thing, they say they are unable to determine what it does mean.

In our judgment, the complainant's construction is untenable. These claims must be construed with reference to the other claims with which they are associated, and in view of the history of the case. When the original broad claim 2 was canceled, these claims 2 to 6 were substituted instead thereof. There can be no doubt as to the scheme and purpose of the patentee in framing these claims. It was clearly his purpose originally to employ one broad claim (2) and two narrow claims (3 and 4). For prudential reasons, understood by every lawyer, whether drafting counts in an indictment or claims in a patent, it is desirable to state the case sometimes broadly, and sometimes with precise detail. It is evident that claims 2 to 6 were intended for broad, general description

of a combination, referring generally to means or adjusting, etc., for the purpose of showing an operative device, while the function of claims 7 and 8 was to describe specifically the mechanism suggested by the patentee to embody the principle of the discovery. Any construction which would make each of these eight claims a duplicate of every other would defeat the manifest purpose of the inventor. The Patent Office twice challenged the broad claims, but in neither instance made objection to the specific claims 7 and 8. It seems to be settled that when certain features are expressly set up in certain claims and entirely omitted in others, the court cannot read them into the claims where the inventor has omitted them. Wilson v. McCormick Harvester Company, 92 Fed. 167, 174, 34 C. C. A. 280. The bolt and slot contrivance for adjusting both runner and rudder is specifically claimed in the seventh and eighth claims, and is wholly omitted in claims 2 to 6. In McCarty v. Railroad Company, 160 U. S. 110, 116, 16 Sup. Ct. 240, 242, 40 L. Ed. 358, it was suggested that a feature of construction described in the specification should be read into the claim for the purpose of sustaining the patent. The court held otherwise, saying:

"While this may be done with a view of showing the connection in which a device is used and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that, if we once begin to include elements not mentioned in the claim, in order to limit such claim and avoid a defense of anticipation, we should never know where to stop. If, for example, a prior device were produced exhibiting the combination of these claims plus the springs, the patentee might insist upon reading some other element into the claims—such, for instance, as the side frames and all the other operative portions of the mechanism constituting the car truck—to prove that the prior device was not an anticipation. It might also require us to read into the fourth claim the flanges and pillars described in the third. This doctrine is too obviously untenable to require argument."

In Boyer v. Keller Tool Co., 127 Fed. 130, 134, 62 C. C. A. 244, 248, the court say:

"So far as claims 42 and 45 are concerned, no particular form of construction or mode of operation is specified in them, and none is therefore to be imposed. * * * Moreover, he has embodied in a special set of claims (49 to 51, inclusive, not involved in this suit) forms of valves corresponding with the specifications, to which, so far as concerns the mechanical combinations there described, the inventor is, of course, confined. But these are not to be written into other claims, which, in order to avoid the duplication that would otherwise result, if for no other reason, are to be taken and interpreted as they stand."

Stearns v. Russell, 85 Fed. 218, 29 C. C. A. 121.

In Penfield v. Potts, 126 Fed. 475, 483, 61 C. C. A. 371, 379, the court say:

"We know of no authority for reading into a claim features which have been omitted, although shown in the specifications. We may, beyond doubt, look to the specifications and drawings for the purpose of understanding the claims, or that we may see whether the device is useful or operative, and sometimes for the purpose of limiting a claim to the particular device described; but we may not enlarge a claim by including therein elements which are not claimed as such."

In National Cash Register Co. v. American Cash Register Co.,. 53 Fed. 368, 3 C. C. A. 562, the third claim omitted any description of particular devices, but concluded with the words "substantially as described," while the second claim described such mechanism in detail.   The court say:

"It cannot be restricted to all or any of the devices used in the mediate connection between the series of keys and the drawer holder, not only because they are not even specified in the third claim, but also because they are expressly claimed in the second claim.   There is nothing upon this record which would warrant us in attributing to the patentee the folly of having presented, and to the Patent Office the improvidence of having allowed, two claims for the same thing.   The distinction between them must be maintained that both may be given effect."

Canda v. Michigan Malleable Iron Co., 124 Fed. 486, 61 C. C. A. 194; General Fire Extinguisher Company v. Mallers, 110 Fed. 529, 49 C. C. A. 138.

The view we have taken seems to be re-enforced by the history of the case in the Patent Office.   When these broad claims 2 to 6 were rejected on the Billups and Sylvester patents, the patentee announced in seeking a reconsideration that in every such claim (2 to 6) it was the combination of the pivoted depth-runner and rudder pivoted to the runner which was the essential feature, calling attention to the fact that the depth-runners in the patents referred to were not pivoted; that the complainant's structure permitted a double adjustment, which is impossible in the construction shown in the references.   There was no suggestion as to the novelty of the means of adjustment, or that the bolt employed in the adjusting mechanism is for the first time to discharge a dual function.   The Patent Office evidently acquiesced in this explanation, and the patent was issued on the strength of it.   Now, to prevent anticipation, it would better suit the purpose of the patentee to make the slot and bolt device the essential feature of these broad claims by mere intendment, in order to subject another to a charge of infringement. This change of front the court cannot indulge.   Metallic Extraction Company v. Brown, 110 Fed. 665, 49 C. C. A. 147.

In passing it may be noticed that the limited construction now sought to be imposed upon claims 2 to 6 is negatived by the testimony of complainant's expert (complainant's record, p. 40), where he swore that he did not regard the claims of the Avery patent as limiting the connection between the braces and the rudder to a single bolt, the said claims covering means broadly for adjusting the height of the depth-runner and clamping the rear end of the rudder thereto.   He also testified that in his judgment the plow shown in defendant's cross-exhibit (defendant's record, 201) would fall within each of the claims 2 to 6 of complainant's patent, notwithstanding the fact that such plow has no slotted runners, and the rudder and runner are not adjusted by the same bolt (complainant's record, pp. 37 to 39).

For these reasons we are of opinion that claims 2 to 6 (both inclusive) have been anticipated by the patents cited, and are therefore invalid.

We now pass to consider the validity of claims 7 and 8. The novelty claimed for the structure specifically described in these claims is that the parts are brought into a new relation by means of the slotted runner, so that both runner and knife may be adjusted at the same point by means of a single bolt; that its utility is apparent, because it involves a less number of parts, and results in a saving of time in adjusting the apparatus. We are inclined to the opinion that the patentee has done more than to produce an aggregation of old elements, and that a certain degree of invention is involved in bringing the parts into a new relation. Conceding the validity of claims 7 and 8, the serious question presented by the record is whether such claims have been infringed by the defendant's structure. It is a familiar principle that a combination is an entirety. If one of the essential elements is wanting, the combination disappears entirely. Walker on Patents, § 349. It is also elementary that if, in such a claim, the patentee specify any element as entering into the combination, he makes the same material to the combination, and it cannot be held immaterial by the court. Shepard v. Carrigan, 116 U. S. 593, 598, 6 Sup. Ct. 493, 29 L. Ed. 723.

The combination suggested by the seventh claim includes "brace-rods rigidly secured to the moldboard and extending toward the runner." In the eighth claim we find the same element described as "rigid brace-rods extending from the moldboard to each side of the runner." In the drawings the brace-rods, 13, 13, firmly bolted to the moldboard and extending to the opposite sides of the runner are a prominent feature. In the specification, classified among the important features of his invention, we find this statement:

"The rear ends of the runner-sections are provided with vertical elongated slots, 14, through which a bolt may be passed, securing the rear ends to rigid brace-rods, as 13, 13. The other ends of the said brace-rods are securely bolted to the moldboard 5."

An examination of the file wrapper and contents shows that the bracing of the moldboard was made an equally prominent feature in the original specification and claim. These braces were carried well up on the wings of the moldboard, and were attached where they would give strength and rigidity to that part of the structure which is subjected to the greatest strain and pressure when the plow is in operation. The defendant has employed lateral braces attached on either side of the depth-runner, but running to ears on the frog, and not in any way attached to the moldboard.

This brings us to the question whether the brace-rods in the defendant's structure are a mechanical equivalent of the brace-rods, 13, 13, in the patent in suit. The true test to be applied in such a case seems to be whether the brace-rods of the defendant perform the same function as the rods 13, 13. If the rods as used by the defendant omit to discharge any material function which were devolved upon them in complainant's patent, that would amount to a strong circumstance against infringement. Walker on Patents, § 352; McClain v. Ortmayer, 141 U. S. 419, 12 Sup.

Ct. 76, 35 L. Ed. 800. We are inclined to the opinion expressed by Mr. Bates, sworn as an expert on behalf of the defendant (defendant's record, p. 68):

"The brace-rods in defendant's plow do not brace the moldboard at all, any more than they would if they were connected to the standard. These brace-rods run to the ears on the frog, and have no more effect on the moldboard than if they ran to the standard."

It is true that on cross-examination this witness admitted, so far as the adjustment of the runners is concerned, that it is immaterial at what point in the plow structure the upper ends of the brace-rods are attached. Counsel for defendant in argument treat the question as though this were a patent for an improved runner with lateral braces, instead of a combination culminating in a complete plow. The double-moldboard is as essential an element as any in the combination. It breaks the furrow, and turns the soil to either side. It sustains enormous pressure when the plow is driven through heavy soil, and the inventor evidently had in mind the reenforcement of this part of the mechanism and gave due prominence to the same, both in his specifications and claims. Burke employed similar braces "to stiffen the moldboards and prevent them from springing." A brace lending support to the moldboard is discharging a most important function. Another brace, similarly related to the runner, which furnished no support to the moldboard, can hardly be said to be a mechanical equivalent. It appears in evidence that by changing the upper point of attachment of these brace-rods, as the defendant has done, it is enabled to dispense with the moldboards and use the plow as a sweep, while the fror· discharges the function of a moldboard. In light soils this is advantageous, because less power is required to operate the plow. The complainant's mechanism will not admit of such adjustment. This circumstance would not of itself furnish an escape from infringement, but it may relieve the defendant of the suspicion of mere colorable invasion.

In applying the doctrine of equivalents the courts discriminate in favor of a primary patent, while in a patent like the one in suit, where the inventor is merely an improver upon an old mechanism capable of performing the same results, a narrower rule of construction is applied. Morley Machine Co. v. Lancaster, 129 U. S. 274, 9 Sup. Ct. 299, 32 L. Ed. 715; Miller v. Eagle, 151 U. S. 207, 14 Sup. Ct. 310, 38 L. Ed. 121. In view of the state of the art, the law would not permit the complainant, who is a mere detail improver of a common and familiar mechanism, to invoke the doctrine of equivalents, except in a case of palpable invasion. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344.

The "middle-burster" plow has been in common use for a quarter of a century. Its improvement has progressed step by step. Avery has in the patented structure gathered all the improved features into a combination, with certain alleged improvements. In such a combination patent the terms "brace-rod rigidly attached to the moldboard" amount to a limitation which he cannot now escape

for the purpose of making out an infringement. It will be observed that, if the broad construction contended for by complainant were to be adopted, then the element "brace-rods rigidly secured to the moldboard" would cover all lateral braces attached to the runner sections, no matter in what part of the plow structure such rods might terminate. It is idle to claim that the brace-rods in defendant's plow lend support to the moldboard because they connect with the frog and because the frog is bolted to the moldboard. A glance at the plow will show that the ears on the frog are not so related to the wings of the moldboard as to give any rigidity or strength to the latter. This case falls within the doctrine of Knapp v. Morss, 150 U. S. 221, 230, 14 Sup. Ct. 81, 84, 37 L. Ed. 1059, where the court say:

"If the Hall patent was a valid pioneer invention, the doctrine of equivalents might be invoked with regard to the sliding blocks and rests, and thus a different question would be raised, but, being confined to the specific elements enumerated by letters of reference, it is neither entitled to a broad construction, nor can any doctrine of equivalents be invoked so as to make the appellants' device an infringement of the second claim in controversy."

For these reasons we are constrained to hold that claims 2 to 6 of the complainant's patent have been anticipated by the prior art, and that the defendant's structure is not an infringement upon claims 7 and 8, and therefore the bill must be dismissed, with costs.