### CLARK v. GEORGE LAWRENCE CO.

(Circuit Court, D. Oregon. April 6, 1908.)

No. 2,788.

1. PATENTS—NOVELTY—BURDEN AND MEASURE OF PROOF.

A patent duly issued is presumptively valid, and one attacking it for want of novelty has the burden of proof; and, if oral evidence is relied on, the proof must be clear, satisfactory, and beyond a reasonable doubt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 35, 36, 40.]

2. SAME—INFRINGEMENT—BUCKING ROLL FOR SADDLE.

The Clark patent, No. 674,757, for a bucking roll for attachment to a saddle, to prevent the rider from being thrown against the front part of the saddle, was not anticipated, and discloses novelty and invention; also *held* infringed.

In Equity. On final hearing.

The complainant, on May 21, 1901, was granted a patent for an invention described as "a certain new bucking roll to be used on stock or Mexican saddles." In further description the inventor specifies as follows: "My invention relates to bucking rolls attached on a stock or Mexican saddle, as used by stockmen on the range, 'cowboys,' 'rough riders,' and men of like occupation, for giving the rider a better hold and preventing him from be-

ing bumped against the fore part or fork of the saddle while rough riding or breaking wild horses." The roll is best represented by figure 5 of the drawing, thus:

It consists of a base of skirting or sole leather, upon which is sewed or stitched a quilted contrivance made of soft or flexible leather, such as cordovan, calfskin, or the like, forming, when so combined with the base, a receptacle for filling, such as hair or like suitable material, and, when filled or upholstered, completes the form of the roll. As will appear from the figure, it consists of the two protruding or enlarged knobs at either end, and the contrivance so reduced in the center as to require little, if any, upholstering to give it shape. The ends are secured to the saddle by leather strings passing through the first holes, or at the forward buttons of the saddletree, and tied; and the center is tied or laced down to the seat of the saddle. There is much more in detail of the invention, but this description will suffice to elucidate the present controversy.

The defendant has been manufacturing and selling in the market an attachable roll, consisting of two pieces, which is readily constructed by cutting the complainant's contrivance in two at the center and attaching a leather strap extension at the small end of each piece, then attaching each by its larger end on the outside of the saddletree, at the first button, one on one prong of the fork of the saddle, and one on the other, and wrapping the strap around beneath the fork, bringing it together at the same button. For the use and sale of this latter contrivance the complainant complains of an infringement upon his patent.

Coovert & Stapleton, for complainant.
Cake & Cake, for defendant.

WOLVERTON, District Judge (after stating the facts as above). It is not seriously contended that complainant's device is not the result of inventive genius. If it were, I think the contention could not be successfully maintained. True, there has been a process of development relative to the idea of a bucking roll such as the complainant lays claim to as the inventor, yet the idea is the result of inventive faculty, rather than mere mechanical skill. The suggestion of such a contrivance first came by the rider of an unruly or bucking horse laying a blanket, rolled in form, across the front of his saddle, and tying it fast, to assist him in maintaining his seat, and at the same time to protect him from being thrown forward upon the pommel of the saddle. A rude improvement upon this method is referred to in the testimony, where round knobs, in the shape of semispheres, between three and four inches in diameter, were fastened to each prong of the fork of the saddle. This was the idea of a Mexican by the name of H. Salazar, but, so far as the record shows, never came into general use. Another contrivance to which the name of bucking roll came to be attached consisted, in its first stage, of a band running across the front part of the seat of the saddle, being fastened by its ends to the second buttons, and sewed or stitched to the seat over the center. Frequently the seat

of the saddle was quilted, and this roll quilted to correspond. It served merely to make the seat more comfortable and for ornamentation —not to prevent the rider in any way from being thrown forward in the saddle. So, also, it was not uncommon for the roll to be enlarged —that is, increased in width and thickness—to suit the taste of the rider, but not for the especial purpose for which complainant's device was designed. It may be said, therefore, without further elaboration, that complainant's product of a new and improved bucking roll was the result of inventive skill and application.

The two serious questions involved by the controversy are: First, whether complainant's contrivance is void of novelty—that is, whether it has been anticipated by the work or invention of others; and, second, whether the defendant's device is an infringement upon that of complainant. It may be premised that the patent, having been issued to the complainant by the lawfully constituted authority of the general government, and presumably after examination and investigation, creates a presumption of novelty and utility, and, if nothing else were offered, no evidence of pertinency and force to countervail the recitations of the patent, the complainant would naturally be entitled to its full protection. Haughey v. Meyer (C. C.) 48 Fed. 679. Further than this, a patent throws the burden upon him who would overthrow or impeach the certified invention for want of novelty; and, whenever an attack is sought to be supported by oral testimony, the adjudications are to the effect that, before it can succeed, "the proof shall be clear, satisfactory, and beyond a reasonable doubt." The Barbed Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 443, 36 L. Ed. 154. This case cites Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821, where the distinct doctrine is stated thus:

"The invention or discovery relied upon as a defense must have been complete, and capable of producing the result sought to be accomplished; and this must be shown by the defendant. The burden of proof rests upon him, and every reasonable doubt should be resolved against him. If the thing were embryotic or inchoate, if it rested in speculation or experiment, if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view. The law requires, not conjecture, but certainty."

See, also, Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153.

With these premises in view, we can understandingly advance to a consideration of the claims made by which it is sought to establish anticipation of complainant's patent. The Spencer patent is the first introduced. The invention consists of pieces of wood secured near the front end of each of the two parts of the saddletree. These are made a part of the tree, and are not detachable. The patent states that the pieces "serve to prevent the rider being thrown forward over the saddle and are designed to supersede the ordinary pommel of military saddles." The device never, so far as the record shows, came into practical use, although the patent was issued in 1862. The next to be introduced is the Woodruff patent, issued in 1861. It consists of an arrangement of stops, built in an angular position upon the side

of the saddle, in such a manner as to gather over the legs of the rider and aid him in keeping down upon his seat in resistance to either a lateral movement of the horse or an abrupt check of its speed, having the tendency to throw the rider forward. These stops are also designed for military saddles. Like the Spencer, this device has never come into practical use; nor is it detachable.

In each of these cases the invention was rather an improvement upon a saddletree, not a distinct contrivance within itself, adjustable or not to the tree, as the owner might desire. Both patents answered practically the same purpose, which was to gather over the legs of the rider, as specified in the latter patent, and operate as an aid to keeping the rider in place in the saddle. Both were clumsy affairs, and evidently not well suited for the purpose for which they were designed, or they would not have been discarded in use. Like the idea of the use of a blanket made into a roll and tied across the front part of the saddle, they were perhaps an advance in the state of the art, but were still lacking in the adaptability to make them of practical utility. The bucking roll in question is detachable, and answers to one function only, that of preventing the rider from being thrown forward from his seat in the saddle, and it is manifest that the patents relied upon are not anticipations of the complainant's invention.

A third patent, or that of George H. Meeker, is alluded to as having anticipated the complainant's invention; but I do not find it in the record, so am unable to determine as to its pertinency.

Other alleged anticipation is sought to be shown by oral testimony. Mr. Gerichten, in describing a quilted saddle and roll, testifies that there were some that covered just half of the seat, others went up to the fork, and others extended over the cantle and jockeys—"that is, the quilting, and then they had different style of rolls. Some had a little narrow roll across; others had a roll with big bumps on the side." Witness then testifies in substance that he made the rolls as far back as 1889; that they were detachable at that time, and not sewed into the seat of the saddle; that the base was a solid piece of leather, similar to the complainant's roll; that they had big protruding knobs on them, a good deal larger than those on complainant's roll—not the same shape exactly, not quite as wide; that the center was narrow, containing no filling at all; that they were attached to the saddle, sometimes at the first button, sometimes on the side and the center, or sometimes tied down, sometimes laced down; that he made a model of the roll and saddle, and had it on exposition at the Manufacturers' Fair in Portland in about 1897, perhaps 1898. On cross-examination he testifies that he made up a couple of dozen of the rolls designated by him, while in Prineville, Or., and a like number while in Colfax, Wash., and sold them out to different persons, but that he could not now give the names of any of them. A painting of the saddle on exhibit at the fair was produced and recognized by witness, and introduced in evidence, which shows that the alleged roll thereon is but an extension of the quilted seat, attached on the sides at the second buttons of the saddle, and presents but slight enlargement of the so-called roll where it is asserted the protruding knobs existed.

F. M. Koontz testifies that he made a saddle in May, 1906, at the

request of one Kanty, of Arlington, and a roll in accordance with a description given by him; that it looked something like defendant's roll when on the saddle; that it was not over half as wide, and the knobs at the ends were not so prominent—were about half as big as those on the Clark roll; that he made two of the rolls for Kanty.

T. S. Coffey testifies that while in business in Scio, Or., in 1899, being a saddler, he gave to Mr. Richardson, Clark's traveling salesman, an order for a roll, which was to be narrow in the center and wider at the ends, and very prominent, and was to fasten at the two front buttons of the saddle; that he came into this idea of a roll early in 1899, in talking to another person about it; that they two together figured out a roll something of that description, and that the rolls "that were used then on the saddles were not sufficient for what they were calculated to be." Witness further states that he cut out a pattern for Richardson, and that a couple of rolls were made from it, and forwarded to him by Clark, one of which is produced and offered in evidence. This roll, it may be said, does not comport with the roll of complainant's patent. It lacks height in the protruding knobs, and is made not nearly so small in the center, and, indeed, is only somewhat larger than the quilted ornamental roll hereinbefore described, and which has been in general use.

W. C. Rupert testifies that, while in business with Gabel, in The Dalles, some time in 1895, his firm made a roll, at the request of one Guthrie, which was at first nonadjustable, but was subsequently changed, at the instance of Guthrie, so that it was detachable, but was fastened at the second buttons of the saddle. A careful scrutiny of the description of this roll given by the witness impresses one that it was not in design of such similarity as to take the place of complainant's roll.

G. H. Farley testifies touching the same roll, and describes it in its first form as "just a plain, straight roll, bulged out some," and says that the reconstructed roll was "a good deal the same" as that of complainant. Witness then deposes that many rolls were thereafter made like the Guthrie roll.

Mr. Guthrie describes the roll as containing bulbs something similar in size to those on the Clark roll. He says that the first roll, when put on, was stitched on, but that after it was altered it was fastened to the second buttons of the saddle, without being laced down in the center.

L. A. Porter testifies in direct contradiction of Rupert, Farley, and Guthrie as to this saddle and the roll attending it. He was a liveryman, and remembers distinctly seeing the roll, having had the saddle in his barn for some time. He describes the roll as being an extension of the quilted seat, and says it was rather out of the ordinary, because it extended farther up on the front of the saddle; that it was sewed fast to the seat; that the change consisted in taking some of the padding out of the center; and that it was the same in general style and appearance as the old style of roll.

In all the testimony there is a manifest lack of that certainty and definiteness, as it pertains to the alleged earlier production of bucking rolls and their exact manner of construction, as to leave it in grave

doubt whether any roll had ever been made or used of substantially similar mold and usefulness prior to the invention of complainant of his style of bucking roll. This conclusion is well illustrated by the testimony of Gerichten, who, after stating with much positiveness that the roll he had constructed was of substantial similarity to complainant's patent, recognized a painting showing the pattern of the roll he attempted to describe, which clearly demonstrates that the recollection of the witness was faulty, and that, so far as his testimony is concerned, instead of showing anticipation, its effect was quite the contrary. So it may be said, of all the oral testimony adduced, there is not that definiteness and certainty about it that affords proof persuasive and convincing as it relates to the question of anticipation. At least, it is wholly insufficient to overcome the presumption of novelty which attends the issuance of complainant's patent. I hold, therefore, that there has not been anticipation of complainant's device.

The next inquiry is whether the roll being manufactured and sold by the defendant is an infringement of complainant's patent. There is but little question that the defendant endeavored, in the production of its roll, to avoid, if possible, any infringement upon complainant's patent. One of its witnesses says as much, and the defendant does not affirmatively controvert the proposition. The only alleged elements of distinction between the two rolls consist in the construction of defendant's roll in two pieces and the manner of attaching them to the saddletree. It will be borne in mind that complainant's roll is attached at the outer ends to the saddletree at the forward buttons, and tied or laced down to the seat in the center. The outer end of each piece of defendant's roll is attached to the tree at the forward button, the same as complainant's. The inner end is contrived with an extension, consisting of a leather strap, which is carried around the prong of the pommel underneath, and made fast, also, at the first or forward button, so that each piece, in its mechanical attachment, is simply tied around a prong of the pommel of the saddletree. Both rolls perform exactly the same function, and the sole question remaining is whether the difference in the manner of attachability attending the defendant's roll is such as will save it from the charge of infringement upon the complainant's patent. I am impressed that it is not; that the difference consists in a mere mechanical equivalent, and not in a patentable improvement in the art.

What would be the difference if the complainant's roll was simply cut in two in the middle, and the inner end of each part tied fast to the saddle seat? It is plain that there could be no elemental difference between a roll so constructed and the original. The difference would be mechanical only. Carrying the discussion further: Suppose the inner ends of the severed roll are made fast by means of a screw entering the prong of the pommel; the difference would manifestly still be mechanical. If this be so, how can it affect the contrivance differently to carry the end by an extension in the way of a strap around underneath the prong to the forward button? Indeed, I find, from an examination of defendant's model, "D," which was offered and received in evidence, that each separate piece of its roll is nailed to the

prong of the pommel on the inside, which being the case, it makes the strap a useless extension, rather than a useful, much less a novel, improvement.

In Erie Rubber Co. v. American Dunlop Tire Co., 70 Fed. 58, 16 C. C. A. 632, relied upon so strongly as being parallel with the case at bar, it will be noted that there was a substantial and elemental difference between the two contrivances about which there was a contention. Not so here. The difference consists of a mechanical equivalent only, and cannot avail the defendant. It is well settled that a broader range of equivalents attends a primary or first invention than where the patent relates to a new combination of old elements, or an improvement. "Therefore, it is said, with reference to such elements in any combination as constitute its subordinate means, no other elements can be equivalent unless they are equivalent inventions; that is, unless they not merely perform the same functions, but perform them by applying the same force to the same object through the same mode of application." · Erie Rubber Co. v. American Dunlop Tire Co., supra.

In the case at bar, however, the difference claimed cannot be said to be elementary in character, but is merely mechanical. True it is, also, that if a patentee specifies any element as entering into a combination, he makes such element material thereto, and the courts will not declare it immaterial. Fay v. Cordesman, 109 U. S. 408, 421, 3 Sup. Ct. 236, 27 L. Ed. 979; B. F. Avery & Sons v. J. I. Case Plow Works (C. C.) 139 Fed. 878. But this principle does not change the rule relative to mechanical equivalents, and does not affect the present controversy.

The defendant should be enjoined from further infringing the complainant's patent, and such will be the decree of the court.