BRYCE BROS. CO. et al. v. NATIONAL GLASS CO. et al.

(Circuit Court of Appeals, Third Circuit. June 5, 1902.)

1. PATENTS—INFRINGEMENT—GLASS REHEATING APPARATUS.

The Schulze-Berge patent, No. 411,131, and the Caldwell patent, No. 442,855, each for a reheating furnace for finishing glassware, are neither of them pioneer patents, entitled to a wide range of equivalents, but they are limited by the prior art to the particular devices and mechanisms described and claimed therein, which in each case is a glass-heating furnace, so constructed as to admit a glory hole in its floor, accessible for vertically presented articles from below, in combination with mechanism that will present the articles to be fire finished in the combustion chamber of the furnace, and withdraw them therefrom; the only substantial difference between the two inventions being in such mechanism. In the apparatus described in each of such patents a furnace is an essential element, and neither is infringed by an apparatus in which no furnace is used, but which consists essentially of a blowpipe in combination with mechanism for rotating the ware in treatment, so as to subject each article in turn to the flame.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Appeal from decree finding infringement of letters patent No. 411,131, issued September 17, 1889, to Herman Schulze-Berge, and No. 442,855, issued December 16, 1890, to M. R. Caldwell, each for a glass reheating apparatus.

J. Snowden Bell and Francis T. Chambers, for appellants.
James K. Bakewell and Wm. L. Pierce, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from a decree of the circuit court for the Western district of Pennsylvania, in a suit in equity brought by the appellees.

The bill recites the grant and issue, on December 16, 1890, of letters patent No. 442,855, for improvement in apparatus for reheating and finishing glassware, to A. J. Beatty & Sons, as assignees of M. R. Caldwell, and the assignment of the title thereto to George Beatty, one of the complainants; the grant and issue, on March 14, 1893, of letters patent No. 493,302, for improvement in apparatus for manufacturing glassware, to Herman Schulze-Berge, and the assignment of the title thereto to the National Glass Company, another of the complainants; alleges that the inventions of said patents are capable of conjoint use, and have been so used by the defendants, and prays in the usual form for an injunction and account.

The answer admits the grant and issue of the letters patent aforesaid, but denies infringement, and denies that it has used the said alleged inventions conjointly, or that they are capable of conjoint use.

Replication was duly filed, and thereafter, and after proofs had been taken by complainants, an amendment to the bill was filed, adding paragraphs which recited the grant and issue, on September 17, 1889, of letters patent No. 411,131, for improvement in furnace for heating glassware, to Herman Schulze-Berge, and the grant and issue, on February 18, 1890, of letters patent No. 421,621, for improvement in the manufacture of glassware, to said Herman Schulze-Berge.

The answers of Bryce Bros. Company and of Andrew H. Bryce, president, to said amended bill, are to the same effect as the answers to the original bill.

Subsequently to the closing of the proofs, to wit, on June 13, 1901, notice in writing was given by complainants' counsel that he would not, at the hearing, insist upon any recovery from defendants upon the claims of letters patent No. 421,621, granted to Herman Schulze-Berge.

The case came on regularly for hearing, and an opinion was filed sustaining the charge of infringement as to patents Nos. 411,131 and 442,855, and finding that infringement of patent No. 493,302 had not been shown. Patent No. 421,621 was not considered or passed upon by the court. A decree was entered accordingly for an injunction and account. An appeal was allowed from so much and such parts of the decree as award an injunction and account in respect to the first claim of patent No. 411,131, and the fifth and sixth claims of patent No. 442,855.

The broad contention of appellants, underlying their assignments of error, is that the state of the art at the date of the application for both of the patents, with which we are here concerned, was such that neither of them was entitled to the character of being primary or pioneer, and should not be dealt with as such, nor be entitled to a broad range of equivalents in considering the question of alleged infringement, but that the claims of each of the patents must be limited to the specific combination and precise improvement described; and that as the appellants did not make or use the specific form of device shown in the patents in suit, the plaintiffs below have no just cause of complaint.

Both patents relate to improvements in furnaces for reheating parts of glassware up to the melting point. The earliest of the patents here

involved, No. 411,131, purports to cover such an improvement. The art involved is that of "fire finishing" blown or pressed glass articles, by subjecting them to a high temperature, in which their sharp edges are melted and smoothed down, and imperfections, such as mould marks in their original manufacture, removed. Previous to the devices embodied in the patents in suit, a pressed or blown glass article, the top edges of which needed to be melted and smoothed down, were inserted into what is called a "glory hole" in the side walls of a reheating glass furnace, where they were revolved until sufficiently smoothed and polished. This was generally done by a man or boy, who fastened the glass article on the top of a rod, by a small lump or ball of soft glass, the glass article being inserted in the glory hole horizontally, and revolved by the turning of the rod in the hands of the one holding it. This hand method was somewhat crude and had certain obvious disadvantages, among which was the necessity of inserting the glass article (a tumbler, for instance) horizontally through the glory hole, which position in itself tended, in the softening of the glass, to deflect the structural axis of the article from a right line at its outer rim, unless great care was exercised by the one who handled and revolved the rod or warming in punty, as it was called. It is upon this view of the art alone that the learned judge of the court below based his opinion, in considering the advance made by the devices of the patent in suit. By this view, a change per saltum was assumed, from the hand method as just described to the mechanical method and device of the patents in suit.

In relation to such a conception of the state of the art, the first of the patents decreed to be infringed, called the Schulze-Berge patent, No. 411,131, describes an improved glass-finishing furnace, the floor of the combustion chamber of which extends out laterally, beyond the combustion flue of the furnace, so as to form projecting ledges which are accessible from below. In these ledges or projections of the floor, there are openings or glory holes, through which the glass articles to be reheated are raised vertically, by means of rods or similar instruments, and inserted into the combustion chamber, to be rotated thereon while supported in a vertical position. As set forth in the specifications of the patent, this furnace comprises an eye or combustion flue of refractory material. Above the flue is a combustion chamber, surmounted by an arched crown of the same material, which covers the floor of the chamber, and at the ends of the crown are openings which afford to the combustion chamber communication with flues which lead to a stack. The crown is said to be constructed after the manner of a reverberatory furnace, so as to deflect the burning gases as they emerge from the combustion flue down upon the floor. This device provided for the raising of the article, which was placed upon a holder, to which was attached a vertical rod, actuated by mechanical means for lifting it to, and into, the glory hole and withdrawing it, and also appliances for revolving it while subjecting it to the heat. There are undoubted advantages in this mechanical method over the hand method already described. Among the advantages, is that of raising the article vertically, requiring no gripping process, as the warming in punty did. The vertical

position had another advantage in presenting the article to the locus of heat, without the tendency to distortion that existed in the horizontal position, and as the article could be pushed up any required distance, and be easily withdrawn, only so much thereof as required fire polishing need be exposed to the heat. The first claim of this patent, decreed by the court below to have been infringed by the appellants, is as follows:

"1. A furnace for heating glassware, consisting in a combustion chamber provided with a floor over which the gases of combustion pass and which is provided with a glory hole or glory holes accessible from below for the introduction and withdrawal of a glass article, substantially as and for the purposes described."

The essential feature of this claim is a furnace, so constructed that it may have a floor, in which there may be a glory hole, or glory holes, accessible from below, for the introduction and withdrawal of glass articles. The apparatus set forth in the descriptive matter and claim, can be best understood by a reference to an illustration taken from Fig. 1 of the patent, in which unimportant reference symbols are omitted for the purpose of clearness. A reference thereto shows an apparatus consisting of a reheating furnace, having a combustion flue, a, gas burner, b, combustion chamber, $c^1$, and glory holes, e, in combination with mechanism for presenting glassware from below to, and withdrawing it from, the glory holes, and for reheating it while exposed to the heat of the furnace.

PATENT 411,131.

The obvious purpose of the patentee was to design a furnace that would admit of the vertical presentation of the glass article to be reheated. As this could not be so readily accomplished at a glory hole in the side of the *furnace*, the construction must be such as to permit a glory hole through its floor. The essential structural peculiarity, therefore, is a furnace with a laterally projecting floor, $c^2$, of

the combustion chamber, in which floor the glory holes are placed, so that a glass article may be vertically raised or lowered, in presenting it to them and withdrawing it therefrom. To make the floor of the combustion chamber in a glass-heating furnace accessible from below, was the problem to be solved, and such a floor, in combination with the mechanism for vertically raising the ware to be heated to, and withdrawing it from, the glory holes, constitutes the apparatus described in the patent and set forth in the claim quoted.

The specific reheating furnace described and set forth in claim 1 (which is the claim declared to be infringed by the court below) is the patented device with which we are here concerned. It embodies, as was stated by the court below, the "substance of the patent." The improvement claimed is appurtenant to a glass-heating *furnace*. Something that may properly be called "a furnace," is predicated by the description of the improvement. The prominent indispensable concept of such a structure, is some sort of inclosed combustion chamber, with top, sides and bottom, or floor. Indeed, the improvement described could not be applicable to a structure without a floor, as it consists in a floor made laterally projecting beyond the combustion flue, so as to be accessible from below. So, too, a combustion *chamber* necessarily implies an inclosed space, within which the gases of combustion may be confined. The terms "furnace," "combustion chamber," and "laterally projecting floor," in which glory holes accessible from below are situated, necessarily imply the definite structure presented to an ordinarily intelligent mind by such a description. These terms have a well-understood meaning in the vocabulary of the industrial arts. It is hardly necessary to refer to the definitions of the word "furnace," taken from standard authorities, as quoted by appellants. To the well-understood general structure of a glass furnace, the alleged improvement of the patent related, and consisted in the lateral projection of the floor of such a structure.

The other patent held to be infringed by the court below, conjointly with the one just described, is the so-called Caldwell patent, being No. 442,855. The patentee says in his specifications:

"My invention is directed to improvements in glory-hole furnaces, particularly designed for reheating glassware, for melting the edges and fire polishing the surface of such articles as tumblers, goblets, and other ware pressed or blown."

Claims 5 and 6 of the patent are those which are claimed to have been infringed. They are as follows:

"(5) In a glass reheating or melting furnace, a fire chamber having vertical wall openings and coincident bottom openings extending through the fire chamber and connecting two of said wall openings, in combination with a table arranged beneath the bottom of the fire chamber, having vertical ware carrying supports arranged in the line of said openings, and means for rotating said table for carrying the ware into the fire chamber through one wall opening and out at the other.

"(6) In a furnace for reheating and finishing glassware, the combination, with the furnace having vertical wall openings, and segmental bottom slot-formed openings extending through the fire chamber and connecting two of said wall openings, of a table arranged beneath the said bottom openings and having several revoluble vertical ware carrying supports arranged to travel through said bottom slots, and means for rotating said table."

A glance at the diagram taken from Fig. 1 of the patent, will show the essential character of the improvement claimed:

# PATENT 442,855.

It will be seen that there is described and shown a glass furnace and combustion chamber, having the essential characteristic of that patented in No. 411,131, to wit, the laterally projecting floor, with the glory holes therein, and thus accessible from below. So far, the requirements of the two patents are identical. Both require a glass-heating *furnace*, and both require that that furnace should be so constructed as to have a laterally projecting floor that would admit of a glory hole therein and be accessible from below. Instead, however, of a simple glory hole, into which glassware could be introduced or withdrawn vertically, we have a segmental slot through the floor of the furnace, connecting the wall openings therein, in combination with the table revolving on a center outside the furnace, and a little below the floor thereof. This table is so centered, that an arc of its circumference always coincides with the slot in the floor of the furnace, so that glass articles can be placed upon carriers situated on the circumference, in such manner as to reach up through the slot into the combustion chamber. Thus arranged, by the revolution of the table they can be carried successively and continuously through the heat of said chamber, an independent mechanism rotating the glass articles as they are carried through.

The validity of these patents is not directly attacked, but the contention is made by the defendant, that the inventions are not of a pioneer or primary character, and that therefore they must be confined

and limited to the precise device, as described in the specifications and claims of the patent. In this contention, we agree. The patents are not for methods, but for particular mechanisms. As such, like all machine patents, they are entitled to a fair construction, and to one that will fully secure to the inventor the monopoly of his real invention. Any device or combination which accomplishes the same result, by substantially the same means, will be held an invasion of that monopoly. Care must be taken, however, in all cases, that we do not, by an uncalled for application of the doctrine of equivalents, practically give to the patentee a monopoly of the function of his mechanism. This, of course, we are not permitted to do, directly or indirectly.

Mechanism for presenting glass articles at the glory hole of a furnace, and withdrawing them therefrom and rotating them thereat, while supported in a vertical position, was not new at the date of the application for either patent. The Lyon and Anderson patent, No. 263,051, August 22, 1882, and the Ripley patent, No. 336,666, February 23, 1886, both show and describe mechanism for presenting glass articles in a vertical position at a glory hole in the side of a furnace. The other element of both patents is, broadly stated, a reheating furnace. This, of course, was not new at the date mentioned, nor was the combination of these elements, in an apparatus for mechanically fire-finishing glassware, new at said date, for it is found in the patents just referred to. So also, the combination of a glass-reheating and melting furnace, and a revolving table, or "merry-go-round," as it has been nicknamed, carrying a plurality of glass articles, is shown in the Schulze-Berge patent, No. 421,621, February 18, 1890. This patent, which antedated the Caldwell patent, No. 442,855, was one of the patents owned by complainants below, of which infringement was charged in this suit, but which was afterwards withdrawn from the consideration of the court. The furnace of the Caldwell patent, No. 442,855, is characterized by the same essential structural feature as that of the earlier Schulze-Berge patent, No. 411,131; that is, "the floor of the combustion chamber extends out laterally beyond the eye of the furnace, so as to form projecting ledges which are accessible from below." The segmental slot openings are formed in this laterally projecting floor, just as the glory holes were in the earlier patent. Though they are accessible from below, the combination of the patent provides for a revolving table, on which the glass articles are placed, and they enter the segmental slot through the side and bottom of the furnace instead of being pushed up from below through the floor. The end, however, accomplished by the device of both patents, is the same; i. e. the glass articles are introduced into a combustion chamber, and subjected to its heat. In the Caldwell patent, as many as can occupy the segmental slot are brought into the chamber and subjected to its heat at the same time. What is called the "fire chamber" in the Caldwell patent, is called the "combustion chamber" in the Schulze-Berge patent. Both patents, therefore, are predicated upon a furnace having the necessary component parts of top, sides and floor, which inclose a fire or combustion chamber, filled with the gases of combustion, and in every part of which the melting heat is distributed.

If patentable at all, then, the invention covered by these two patents must be confined to the particular device and mechanisms described and claimed, which, in each case, is a glass-heating *furnace*, so constructed as to admit a glory hole in its floor, accessible for vertically presented articles from below, in combination with mechanism that will present the articles to be fire-finished in the combustion chamber of the furnace, and withdraw them therefrom.

Let us now see in what respect, if at all, appellants' structure can be claimed to have infringed upon the devices set forth in the two patents here under consideration.

It will be best understood by a reference to complainants' exhibit drawing of defendants' apparatus. This apparatus differs essentially from the structure of each of the patents in suit, in not employing *a furnace* of any description whatever, its source of heat being *a compound blowpipe burner*, in the operation of which the work is done by the direct impingement of the flame upon the article to be treated. One of appellants' experts thus explains the construction and manner of operation of appellants' apparatus:

APPELLANTS' APPARATUS.

"The defendants' apparatus clearly belongs to what I have designated as type (b) 'Blowpipe Flame Apparatus,' and briefly stated may be said to comprise a compound blowpipe to which has been added mechanism for rotating the ware so that the several articles to be treated may be, in turn, subjected to the direct action of the blowpipe flame.

"Referring to the drawing showing defendants' structure, it will be seen that the nozzle of the blowpipe is marked I, and that this is supplied with air and gas through two separate pipes, marked $I^1$, and that, as a means for causing the articles to be treated to be moved along until each in turn comes in contact with the blowpipe flame, there are provided a series of vertical rods C, cup-shaped at the top, and supported upon the outer rim of a horizontal disk which is carried by a vertical shaft A, and arranged to be driven by the belt wheel $A^7$.

"In order to insure the stoppage of each article in turn, directly in con-

tact with the flame, a latch or stop, y, is provided, designed to act against each rod in turn until such time as the operator releases it and permits the horizontal disk to move around until the next article of ware to be treated comes in contact with the flame. * * *

"In the drawing of defendants' device referred to, there is shown a hood or shield, D, open at the bottom and designed to cover the major portion of the blowpipe flame, in such a way as to protect the operator to some extent from the heat. This hood or shield, D, is arranged with a hole or opening, J, into or through which the compound burner, I, projects, and whereby the hood is prevented from interfering with the contact of the flame against the articles being treated. The ware could be fire-finished in the flame without the employment of the hood or shield, and the essential features of defendants' structure may, therefore, I think. be fairly said to be the compound blowpipe, and the mechanism by which the ware is caused to travel around so as to be treated by the flame in turn."

This segmental hood, covering a small arc of the circular path of the vertical cup-bearing rods, is, what it is called, a hood or shield, and is not the combustion chamber of a furnace, or any other part thereof. Although the mechanism for holding the glass articles revolves through it, it has no analogy, either in construction or function, to the combustion fire chamber of the patents in suit. It has no bottom or floor, through which or in which glory holes or segmental slots could be placed. As testified to by appellants' witnesses, it is generally composed of sheet iron or copper, sometimes lined with refractory material and sometimes not lined at all, and there is evidence tending to show that it can be dispensed with entirely, as the articles to be treated are not melted by the heat held within it, or under it, but by the direct impingement of the blowpipe flame. As a matter of fact, the appellees, the complainants below, are not consistent in their testimony, as adduced, nor in their argument, in calling the space covered by the hood, a combustion chamber or furnace. It is repeatedly alleged by appellees that the lateral hole, J, of appellants' apparatus, is its combustion chamber. In so alleging, they admit what we have just asserted to be true, that the hood, D, is not a combustion or fire chamber. One of the expert witnesses of appellees, complainants below, alleges that, as to patent No. 411,131, the lateral hole, J, of appellants' apparatus is the "combustion chamber," and as to patent No. 442,855, the hood, d, is the "fire chamber." But we have already pointed out, what we think very obvious, that the "combustion chamber" of patent No. 411,131, and the "fire chamber" of patent No. 442,855, are identical in construction and function. In the former patent, the glass article is thrust vertically from below through the floor of the combustion chamber, and withdrawn by reversing the movement. In the latter, a number of these articles, on the circumference of a revolving table or "merry-go-round," are swept through the segmental slot made in the side and floor of the fire chamber. In the apparatus described in both the patents in suit, a *furnace,* as generally understood, is essential, and the glass articles to be treated are thrust into, or carried through, the heat which pervades every part of the combustion chamber of the furnace. In defendants' apparatus, however, the articles to be treated are not subjected to effective heat, merely by being carried under the hood described. They must, in order to be fire-polished, be subjected to the direct impingement of the

blowpipe flame.  It is in testimony by the appellants, that the hood is used to protect the operator and take care of the spent combustion from the blowpipe, and it does not help the complainants below to show that, without the hood, the articles treated were so discolored as to require much labor and expense to brighten them by hand.   If the function of the hood be to prevent this as well as to protect the operator, it is incidental merely, and does not invade any part of the peculiar function of the invention of the patents in suit.

As we have already said, in view of the state of the art, there is no reason why the scope of the two patents we have been here considering should be enlarged beyond the ordinary signification of the terms used in the claims, in connection with the specific mechanisms described in the specifications of the patent.  We fail to find in the apparatus of the appellants a furnace for heating glassware, with a combustion chamber provided with a laterally projecting floor, over which the gases of combustion pass, in which are glory holes accessible from below, as set forth in the first claim of patent No. 411,131.   Nor do we find in this apparatus the essential features of claims 5 and 6 of patent No. 442,855.  Defendants' apparatus does not present to us the glass reheating or melting furnace, with a fire chamber, having vertical wall openings and coincident bottom openings, extending through the fire chamber, and connecting two of said wall openings alone or in combination with vertical ware carrying supports, as set forth in claims 5 and 6.   It would be a very refined and strained construction that would identify the hood, D, of appellants' apparatus, with the combustion or fire chamber of either of the patents referred to, and it seems to us to do violence to the natural meaning of terms to speak of the hole, J, through which the blowpipe burner emerges, as a glory hole; nor does the bottomless condition of the hood correspond in any way with the glory hole or segmental slot in the floor of the combustion chamber of either of the patents in suit. The hood, D, is entirely open on its lower side, as it is at both ends, and has neither a floor nor any equivalent therefor.   Much less, as it seems to us, can the hole, J, through which the blowpipe burner passes in the alleged infringing apparatus, be said to correspond to the combustion chamber of either of the patents in suit.

In conclusion, we do not think that the contention of the appellees, that either of the patents in suit is pioneer or primary in character, or entitled to be otherwise construed than according to the natural meaning of the terms used in its claims, in connection with the specifications, is warranted, or that, taken in connection with the state of the art, they are entitled to any broad range of equivalents.  We are of opinion that defendants' structure does not contain the specific reheating furnace of either of the patents here discussed, or any reheating furnace whatever, the glassware being heated by the direct impingement of a blowpipe flame, and not by the heat generated by the gases of combustion, and stored up, in a combustion chamber.   The functions of the hood or shield in defendants' apparatus are not equivalent to those of a reheating furnace, even if mere functional equivalents were admissible to establish infringement.

In the view we have taken of the specific character of the mechanism

which embodies the invention of the patents in suit and here for consideration, it is not necessary to consider more at length than we have done, the state of the art, as disclosed by the record; or the claims and specifications of the Schrader patent, under and pursuant to which it is alleged appellants' apparatus was constructed.

We are of opinion that infringement of patents Nos. 411,131 and 442,855 has not been established, and that the bill as to these patents should be dismissed. The decree of the court below is therefore reversed, and the cause is remanded to said court, with directions to enter a decree in conformity with this opinion.