### NATIONAL MFG. CO. v. SHARON HARDWARE MFG. CO.

(Circuit Court, W. D. Pennsylvania. February 17, 1911.)

No. 6.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DOOR HANGER.

The Benson patent, No. 818,603, for a door hanger, while it must be given a narrow construction, discloses novelty and invention, and the device is one of utility, having the advantages of both a one-piece hanger and a hinged hanger. Also, *held* infringed.

In Equity. Suit by the National Manufacturing Company against the Sharon Hardware Manufacturing Company. On final hearing. Decree for complainant.

Rector, Hibben & Davis, Frank Parker Davis, and Jos. M. Nesbit, for complainant.

Edward A. Lawrence and Horace W. Davis, for defendant.

ORR, District Judge. This matter comes before the court for final hearing upon bill for infringement, answer, replication, and proofs. Complainant has the title to letters patent of the United

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

States No. 818,603 for "door hanger," issued to William P. Benson April 24, 1906. The device of the patent is one of many which have been used to suspend the doors of barns, warehouses, and other structures. The early hangers have been called "solid or one-pieced" hangers, because they permitted only of lateral movement on a track fixed to the building. Some later hangers have been called "hinged hangers," which permitted not only of lateral movement as above described, but also because the door bracket was hinged to the wheel frame, permitted an outward and upward movement of the door without derailing the track wheel. Benson in his specification says:

"For the purpose of hanging the door upon the track rail and sliding it longitudinally thereof, therefore, my hanger embodies the advantages of a solid or one-piece hanger, while by the hinged connection of the lower part of the hanger with the upper it is, in effect, a hinged hanger for all of the purposes of a hinged hanger."

Apart from the inference to be drawn from that language, the evidence clearly shows that the function of the hinged hanger was well understood long prior to Benson's activity in the art. Benson's patent, therefore, if valid, should receive a narrow construction. Bryce Bros. Co. v. National Glass Co., 116 Fed. 186, 191, 192, 53 C. C. A. 611.

The material parts of the specification, not including part quoted above, are as follows:

"My improved hanger, which is preferably, but not necessarily, made from sheet metal, comprises a lower bracket portion 1, adapted to be secured to the door as usual, and an upper wheel-supporting frame or hood having journaled in it the usual grooved track wheel 3. The bracket 1 and frame 2 are hinged together by a pin or pintle 8, which passes through eyes 5, formed upon the upper inwardly-bent ends of the side arms of the bracket 1, and through an intermediate bearing 7, formed upon the lower edge of the inner side of the hood or frame 2. This bearing 7 is formed in the present instance by rolling up the lower edge of said side of the frame into tubular form and is located at the inner side of the track wheel 3 between the axis and the periphery of the latter, the inward bend or extension of the upper ends of the side arms of the bracket 1 permitting the body of the latter to normally hang in the vertical plane of the opposite or outer side of the frame or hood 2. This outer side of the frame or hood 2 extends downwardly below the wheel 3 and has projecting inwardly from its middle a curved guard 9, which travels

beneath the track rail upon which the wheel 3 rests and prevents displacement of the wheel from the rail.

"The opposite arms of the bracket 1 are connected, near their upper ends, by a crossbar 6, which normally rests against the outer face of the outer side of the frame or hood 2 as shown in Fig. 3. The contact of this crossbar 6 with the lower end of the frame 2, as in Fig. 3, limits the inward movement of the bracket 1; but the bracket is free to be swung outward and upward, as indicated in the dotted lines in Fig. 3, independently of the frame 2 and the wheel carried thereby. Inasmuch as the door is secured to the inner side of bracket 1 and is usually of such thickness as to project inward beyond the vertical plane of the wheel 3, the hinging of the bracket to the frame 2 at a point at the inner side of the plane of said wheel and the contact between the depending extension of the frame and the crossbar of the bracket will cause the bracket and frame 2 to hang in a substantially vertical plane and in line with each other, as in Fig 3, and prevent any tilting or binding of the grooved wheel 3 upon the track rail. The provision of the crossbar 6 and the depending extension of the frame 2 co-operating with it and limiting inward movement of the bracket 1 independently of the frame makes my hanger, in effect, a solid hanger except when it is desired to swing the door outwardly and upwardly. * * *

"By reason of the hanging of the bracket at a point above the lower edge or tread of the track wheel and at one side of the vertical plane thereof, the door has a tendency to assume a vertical position in proximity to the building or door-opening, but not to contact the same, inasmuch as the door will hang suspended in a vertical plane passing through the pintle on which it is pivoted, besides which the stop arrangements hereinbefore referred to will limit the inward movement of the door. Moreover, the advantage is obtained of providing a full door opening when the door is raised and used as an awning."

The claims of the patent involved are as follows:

"5. A door hanger comprising a frame having a track wheel journaled therein, a depending bracket hinged to said frame at the inner side of the track wheel and above the lower edge thereof, and means for limiting the inward movement of said bracket relatively to said frame while permitting its free outward movement independently of said frame; substantially as described.

"6. A door hanger comprising in combination with a track wheel a frame in which such wheel is journaled and which extends thereover as a hood, a depending bracket hinged to said frame at the inner side of the track wheel, said frame having an extension projecting below the wheel, and means for limiting the inward movement of the depending bracket relatively to the wheel frame while permitting its free outward movement independently of said frame; substantially as described.

"7. A door hanger comprising in combination with a track wheel a frame in which such wheel is journaled and which extends thereover as a hood, a depending bracket hinged to the inner end of the frame or hood, said frame having an extension projecting below the tread of the wheel, and a crossbar on the bracket and arranged in the path of movement of said extension to limit the inward movement of the bracket; substantially as described."

"16. A door hanger comprising a track wheel, a frame therefor, a downward extension from said frame at one side of the wheel, said extension being constructed to engage the track rail to prevent derailment of said wheel, and a bracket having a hinged connection with said frame at the other side of said wheel, a portion of said bracket being adapted to engage said downward extension, whereby the movement of said bracket in one direction is limited.

"17. A door hanger comprising a frame having a track wheel journaled therein, and a bracket hinged to said frame at one side of the central plane of said wheel, said frame and bracket having engaging parts adapted to limit their relative movement due to the offset hinging of said bracket."

A detailed analysis of each of the claims is perhaps not necessary, as many of the elements are old in the art. The real merit in the

Benson hanger is the location of the hinge at the inner side of the plane of the wheel and the co-operation of the hinge with the stop device or crossbar 6. There is nothing in the prior art which suggests such arrangement and co-operation. Door hangers had been on the market for many years prior to the Benson hanger. The demand for the Benson hanger has been large. Utility, novelty, and invention are found in that hanger.

Defendant's hanger is very much like plaintiff's. The differences in construction which should be observed are the location of the hinge, although within the plane of the wheel, yet nearer thereto than in plaintiff's hanger, and the location of the stop-device. The crossbar 6 of the patent in suit is wanting. The stop-device of the defendant's hanger is not attached to the bracket, but is an extension of the frame underneath the wheel horizontally for a distance equal to the width of the door and then downward vertically for an inch or such other short distance as may be sufficient to engage the top of the door when it is approaching or has approached its normal hanging position. What is called the curved guard 9 in the Benson patent is found in the defendant's hanger; it being a part of the horizontal portion of said extension and is curved upward to prevent displacement of the wheel from the rail. It is clear that the co-operation of the hinge with the stop-device has the same effect as in the Benson hanger. The function of the vertical portion of the frame extension, as stated above, to be found in defendant's hanger, is the same as that of the crossbar 6 in the Benson patent. Each co-operates with the hinged connection "to limit the inward movement of the door." To the extent, therefore, that defendant's hanger has the hinge location and the stop-device and the co-operation of both, defendant infringes the Benson patent in the several claims in dispute.

Defendant insists further that it has not infringed the Benson patent because its hanger is *tiltable,* while the patent is for an *untiltable* hanger. It is suggested that a classification of hangers as *tiltable* and *untiltable,* is proper, and that in either class there may be both "solid or one-piece hangers" and "hinged hangers." The following excerpt from defendant's brief throws light upon its contention:

"An examination of the patent in suit is convincing that Benson never contemplated the use of a hanger which is tiltable on the track, but intended to confine himself to a hanger whose wheel and wheel frame is held in constant vertical relation to the track rail."

I do not reach the same conclusion. At the date of the application there was, in the use of the usual grooved track wheel, a clearance in the groove between the flanges of the wheel and the track rail of about one-sixteenth of an inch. This necessitated the guard 9, not to prevent tilting, but "displacement of the wheel from the rail." There is, in the specification, it is true, a statement that the hinging of the frame as indicated and the contact between the frame and crossbar will prevent any tilting or binding of the wheel upon the track rail. It is natural to infer that when there is no such contact there may be a tilting of the wheel and wheel frame. Even where there is such contact the bracket and frame will hang in a substan-

tially (not positively) vertical plane. It does not seem as if any one skilled in the art would conclude from an examination of the patent that the wheel frame would not tilt to a greater or less extent (dependent upon the weight of the door or rapidity of movement) when the door should be moved outward and upward. This disposes of defendant's contention that the patent in suit is nothing but a *paper* patent.

The plaintiff is entitled to a decree as prayed for. Let a decree be drawn.